**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION at LEXINGTON**

_____

|   |   |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 5:15-cv-00296-JMH |
| | ) |
| UNIVERSITY OF KENTUCKY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

## I.      INTRODUCTION

Plaintiff Jane Doe has thoroughly pleaded her claims of sex discrimination and retaliation in violation of Title IX of the Education Amendments of 1972 against Defendant the University of Kentucky ("the University"), arising out of John Doe ("the Assailant") raping her, and the University's deliberately indifferent and retaliatory response to her report of rape.  Her Complaint sharply exposes the University's gross disregard for following its own policies, and repeated dispensation of misinformation to Doe about the adjudicative process. Its ineptitude and failure to fix the problems in executing its disciplinary process over the span of two years prevented Doe from being able to obtain an education on the University's campus.  Throughout this time, the University's staff displayed a callous disregard for how the aftermath of the rape was disrupting Doe's education and failed to take reasonable measures to ensure the rape she endured did not deprive her of educational benefits and opportunities.  After Doe filed this

lawsuit, the University interfered with the disciplinary process to Doe's detriment, attacked Doe for filing a lawsuit, and allowed her rapist to evade responsibility for his violent conduct.

What cannot be disputed in this case is that it should not have taken four hearings, four appeals, and more than two years to conclude the University's response to Doe's report of rape. The University in its motion to dismiss attempts to cast Doe's claims as diametrically opposed to providing due process to her Assailant. This is wrong. Doe does not wish that the University had denied the Assailant due process; she merely requests that the University be held accountable for its failure to address sexual violence effectively, to fix its process so that due process can be afforded while also promptly and adequately responding to reports of rape, and to ensure that students who experience sexual assault are not deprived of their statutorily protected educational benefits and opportunities. The University's failure to do so is clearly unreasonable and therefore in violation of Title IX.

## II.    SUMMARY OF FACTS

Doe began her postsecondary education enrolled in a partnership program between Bluegrass Community and Technical College ("BCTC") and the University. Third Am. Compl., DE 57, ¶ 7 (hereinafter "Compl."). The program offered an opportunity unique for a community college: to live in a college dorm on the campus of a four-year institution, the University. Compl. ¶ 9. The University advertised its relationship with BCTC as one that provided a "seamless transition" for students like her, who intended to transfer to the University and obtain a bachelor's degree. *Id.* ¶¶ 7-8.

Doe's first semester of college was devastatingly derailed when the Assailant began stalking her, threatening her with violence, and on October 2, 2014, raped her in her dorm room. *Id.* ¶¶ 10-11. That same day, Doe reported the rape to the University by contacting the

2

University police department, who then informed the Dean of Students. *Id.* ¶¶ 16-18. The University's Title IX Coordinator, however, was not notified or involved in the investigation or adjudication of her report of rape for over two years. *Id.* ¶¶ 19-20. A disciplinary hearing was held, but contrary to the process laid out in the applicable Code of Conduct, no University official collected evidence, performed witness interviews, or conducted any investigation in preparation for presentation of the facts on Doe's behalf. *Id.* ¶¶ 23-25, 27. At the hearing, Doe testified about having flashbacks and nightmares, feeling unsafe, and considering quitting college. *Id.* ¶ 29. None of the University officials who heard this testimony offered Doe any help to encourage her to continue with her studies, nor did they refer her to any academic support services. *Id.* ¶ 31. Doe dropped out of her classes and withdrew from campus housing shortly after the hearing. *Id.* ¶ 33. At the beginning of the next semester, she enrolled in classes at another BCTC campus. *Id.* ¶ 45.

The hearing panel for the first hearing found the Assailant responsible for the rape, but the Assailant successfully appealed the decision. *Id.* ¶¶ 30, 34, 39. In contrast to Doe, who was left on her own to navigate the process, the Assailant had the assistance of counsel, an attorney who routinely represented University athletes in criminal and student disciplinary proceedings, at times in collaboration with University administrators. *Id.* ¶¶ 34-36. Although Doe also had the right to retain counsel, when she specifically asked if she should get a lawyer, a member of the University staff told her, incorrectly, that "attorneys are not appropriate" for the disciplinary process. *Id.* ¶¶ 37-38.

For the second administrative hearing, Doe, based on poor advice from University staff, decided to not participate in person. *Id.* ¶ 42. The Assailant was found responsible, but he again appealed the decision. *Id.* ¶¶ 43-44. Doe's decision to not participate in the second hearing in

person, which was the basis of the Assailant's second successful appeal, was made in reliance on incorrect information from University staff that her recorded statement from her first hearing could be used at the second hearing. *Id.* ¶¶ 42, 46. Doe had been considering returning to the University campus to continue her education but became discouraged from doing so when she found out the Assailant had prevailed on his second appeal. *Id.* ¶ 47.

In anticipation of the third administrative hearing, Doe was again given misleading advice by University staff. *Id.* ¶ 48. She was told that she could choose to not participate in person, or refuse to answer questions, and the Assailant could still be found responsible. *Id.* Based on the rationale of the second appeal decision, making herself unavailable for questioning would necessarily provide the Assailant an avenue for a successful appeal of a decision against him, but this was not explained to Doe. *Id.* Doe was then promised by University staff that the third hearing would be the final one. *Id.* ¶ 49. The panel for the third hearing found the Assailant responsible, but he yet again successfully appealed the decision. *Id.* ¶¶ 52-53, 55. Doe wrote to the chair of the appeals board, informing him that "all the hearings have distracted me from being able to attend my classes, which led me to fail the first semester [at her new program]." *Id.* ¶ 54.

In anticipation of a fourth hearing, Doe was once again given incorrect information about the hearing process. *Id.* ¶ 57. She asked the Dean of Students if there was anything new about the hearing procedures. *Id.* Although the University had updated its policies, and specifically created new procedures for disciplinary proceedings involving sexual, dating, or domestic violence that applied to the fourth hearing, the Dean of Students told Doe, incorrectly, that the University would "utilize the same procedures as the past three hearings." *Id.* ¶¶ 56, 58.

At this point, the disciplinary process, with its numerous hearings and appeals, had spanned nearly a year. Mentally exhausted by the process, Doe again changed educational programs, enrolling in a dental assistant certification program. *Id.* ¶ 62.  In October 2015, she filed her first complaint in this lawsuit. *Id.* ¶ 63.  Following the filing of this suit, the University dragged its feet in scheduling a fourth hearing, out of concern for the Assailant's football schedule. *Id.* ¶¶ 64-68.

The fourth hearing was finally scheduled for January 10, 2017, more than two years after Doe's report of rape and more than a year after she filed her lawsuit. *Id.* ¶ 70.  The University yet again disregarded its own process and failed to hold a pre-hearing meeting with Doe to review the investigative file, discuss the hearing process, receive her input regarding sanctions, and attempt to resolve the matter without conducting a formal hearing. *Id.* ¶ 71.  The University knew that the hearing process had caused Doe a significant amount of distress, but it did not perform the required pre-hearing meeting to aid her in the process or possibly negate the need for a formal hearing. *Id.*  The University police then discouraged, misled, and prevented a supporting witness from testifying at the hearing on Doe's behalf. *Id.* ¶¶ 72-75, 80-82, 85.  The University also permitted Doe to be questioned about having filed this lawsuit at the hearing, injecting the hearing with the suggestion that Doe's assertion of her rights was motivated by a desire for a monetary recovery. *Id.* ¶¶ 77, 98.  The Assailant was found not responsible and Doe's appeal of that decision was denied. *Id.* ¶¶ 78, 83, 86.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When reviewing a motion to dismiss, the Court must accept the well-

pleaded allegations of the complaint as true, construe factual allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). The court may only consider documents attached to a motion to dismiss in ruling on the motion if the attached documents are both referred to in the complaint and central to the plaintiff's claim. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). When presented with documents which go beyond the pleadings, a court may either exclude those documents, or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). If the court treats the motion as one for summary judgment, it must provide "unequivocal notice" to the parties of its intention to do so and an opportunity to supplement the record. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001).

## IV.   ARGUMENT

### A.   Defendant's Exhibits Should Be Disregarded

Upon retaining new counsel, Doe was eager to proceed to discovery, and in fact, counsel for Doe's first contact with Defendant's counsel was for the purposes of discussing a proposed scheduling order for discovery. *See* Joint Mot. for Stay, DE 52, ¶ 1. Doe moved to amend her complaint in response to Defendant's insistence that it would move to dismiss the previous complaint in its entirety. *Id.* Now, rather than only attacking the sufficiency of Doe's pleadings, Defendant has attached 15 exhibits which go far beyond that which is referred to and central to the complaint in an attempt to railroad Doe into a summary judgment posture before she has had the opportunity to conduct any discovery.

The court should exercise its power to exclude the exhibits and decline to treat the motion as one for summary judgment because it would be unfair and inefficient to do otherwise. *See Options Home Health of N. Fla., Inc. v. Nurses Registry & Home Health Corp.,* No. 5:11-CV-

6

166-JMH, 2012 U.S. Dist. LEXIS 17176, at *11-12 (E.D. Ky. Feb. 9, 2012) (noting that it would

be inefficient to allow discovery for purposes of opposing defendant's motion to dismiss rather

than "allowing discovery to proceed in due course" and considering summary judgment after "all

of the relevant evidence [has been] brought to light"); *Black v. Franklin Cty, Ky.*, No. 3:05-CV-

18-JMH, 2005 U.S. Dist. LEXIS 26362, *8 n.1 (E.D. Ky Aug. 16, 2008) (same); *see also M.Y. v.*

*Grand River Acad.,* No. 1:09 CV 2884, 2010 U.S. Dist. LEXIS 55269, at *6 (N.D. Ohio May 28,

2010) (finding it unfair to convert a motion to dismiss into a motion for summary judgment

where no there has been no discovery)*; Thompson v. Tenn. Bd. of Nursing,* No. 3:05-0580, 2006

U.S. Dist. LEXIS 29868, at *5 (M.D. Tenn. Apr. 26, 2006) (same).[1]

### B. Plaintiff's Complaint Sufficiently Pleads A Claim of Discrimination Under Title IX

Title IX of the Education Amendments of 1972 protects individuals from sex-based

discrimination that interferes with equal participation in education programs or activities.  20

U.S.C. § 1681(a).  It provides that "[n]o person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance." *Id.*  A school that

receives federal financial assistance is liable to a plaintiff under Title IX for sexual harassment

committed by its students or employees against the plaintiff if (1) the sexual harassment was so

severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff access to

educational opportunities or benefits, (2) the funding recipient had actual knowledge of the

---

[1] Plaintiff in this opposition will only address Defendant's arguments as they relate to the
sufficiency of the Third Amended Complaint. Should the Court decide to consider the exhibits
attached to Defendant's motion, Plaintiff requests the opportunity for discovery, or at a
minimum, notice of the Court's intention to do so and an opportunity to file a supplemental
opposition. Plaintiff's motion and affidavit under Federal Rule of Civil Procedure 56(d) will be
filed contemporaneously with this opposition.

sexual harassment, and (3) the funding recipient was deliberately indifferent to the harassment. *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000). A serious sexual assault meets the severe, pervasive, and offensive standard, even if it occurred only once. *T.Z. v. City of N.Y.,* 634 F. Supp. 2d 263, 271 (E.D.N.Y. 2009) ("a sufficiently serious one-time sexual assault may satisfy the 'pervasiveness' requirement"); *Lopez v. Metro. Gov't*, 646 F. Supp. 2d 891, 913 (M.D. Tenn. 2009) ("even a single incident of rape is sufficient" to establish actionable sexual harassment under Title IX); *Doe v. Dall. Indep. Sch. Dist.,* No. 3:01-CV-1092-R, 2002 U.S. Dist. LEXIS 13014, at *17 (N.D. Tex. July 16, 2002) (a single instance of forced vaginal penetration qualifies as sufficiently severe harassment for Title IX purposes). The actual knowledge element is satisfied when the school knows of "a substantial risk of sexual abuse." *Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 368 (6th Cir. 2005) (upholding a jury instruction articulating the "substantial risk" standard as a "correct statement of the law"); *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1259 (11th Cir. 2010); *Roe v. Gustine Unified Sch. Dist.,* 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009) (citing cases and applying the "substantial risk" standard). To be "deliberately indifferent" to that risk, the school's response to the harassment must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "[D]eliberate indifference will often be a fact-based question, for which bright line rules are ill suited." *Doe v. Derby Bd. of Educ.,* 451 F. Supp. 2d 438, 447 (D. Conn. 2006); *see also Lilah R. v. Smith*, No. C 11-01860 MEJ, 2011 U.S. Dist. LEXIS 81023, at *15 (N.D. Cal. July 22, 2011) ("Generally, deliberate indifference is a fact-intensive inquiry and is often a question for the jury's determination.")

The facts asserted in the Third Amended Complaint support each of element of a Title IX discrimination claim. Jane Doe was raped by the Assailant, a male student of the University, in a

University dormitory.  She reported the rape to the University Police Department who then informed the Dean of Students.  Doe meets the first two elements of a Title IX discrimination claim without dispute.  With regard to the University's deliberate indifference, it was the University's failure to properly carry out its own policies and procedures that prevented a prompt and final resolution to her report of rape.  During the years that the numerous appeals and hearings were ongoing, Doe had no assurance that if she continued her education at the University's campus, it would not be disrupted by the Assailant's return to the University.  Additionally, participating in the process itself took a significant toll on Doe's ability to continue her education.  The University disregarded the effect of both the rape and the protracted process on her ability to continue her education on campus and did not take adequate measures to ensure she was not denied educational opportunities as a result of the rape.  Doe also asserts that University staff, specifically members of the police department, deliberately interfered with the disciplinary process to her detriment.  These actions and inactions, when considered together, constitute deliberate indifference.

The central purpose of Title IX is to ensure that students are not excluded from educational opportunities because of sex discrimination, including sexual violence.  Therefore, the focus of a university should be on both addressing the threat posed by a perpetrator of sexual violence *and* ensuring the education of the survivor is not derailed by the violence she has endured.  For this reason, failure to provide academic accommodations is evidence of deliberate indifference.  *See Kelly v. Yale Univ.,* No. 3:01-CV-1591 (JCH), 2003 U.S. Dist. LEXIS 4543, *12 (D. Conn. Mar. 26, 2003) (failure to provide academic accommodations "was clearly unreasonable"); *McGrath v. Dominican Coll. of Blauvelt*, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009) (failure to "engage in any meaningful discussion" regarding accommodations is evidence

of deliberate indifference). Even where an individual withdraws from an education program shortly after being assaulted, a school is still liable for its deliberate indifference that prevents that individual from being able to return to the program. *Williams v. Bd. of Regents,* 477 F.3d 1282, 1297 (11th Cir. 2007).

Additionally, "[a]n institution's failure to properly investigate a claim of discrimination is frequently seen as an indication of deliberate indifference." *S.S. v. Alexander*, 177 P.3d 724, 738 (Wash. Ct. App. 2008) (citing cases); *see also Davis*, 526 U.S. at 629 (noting that a lack of effort to investigate supports a claim of deliberate indifference). Here, the University did not perform an investigation for purposes of the disciplinary process, leaving the burden on Doe, who was coping with the trauma of the rape, to marshal her own evidence.

Doe has also put forth facts that indicate the University was more concerned with protecting the Assailant's ability to participate in athletics than in ensuring the prompt resolution of Doe's report of rape. This too is evidence of deliberate indifference. *See Rex v. W. Va. Sch. of Osteopathic Med.,* 119 F. Supp. 3d 542, 551 (S.D. W. Va. 2015) (school's focus on protecting its own reputation rather than investigating plaintiff's complaint supports a claim of deliberate indifference).

Furthermore, the University should not be absolved of liability because it quickly held a disciplinary hearing, when the remedial effect of that hearing was zeroed out by the University's inexcusable bungling of the process overall, which included three more hearings and appeals over the course of three years to bring the matter to final resolution, and caused Plaintiff to live in fear during that time that the Assailant might be allowed to return to the University's campus. A school cannot hide behind ineffective actions to suggest it is not deliberately indifferent. *See Vance,* 231 F.3d at 261 (6th Cir. 2000) (where a school "has actual knowledge that its efforts to

10

remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances"); *Leader v. Harvard Univ. Bd. of Overseers*, No. 16-10254-DJC, 2017 U.S. Dist. LEXIS 39601, *12 (D. Mass. Mar. 17, 2017) ("precedent does not appear to suggest that as long as a university acts in some way in response to reported sexual harassment, it has satisfied its burden under the deliberate indifference standard"); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 210 (D.N.H. 2009) (holding that some aspects of a response could be "so lax, so misdirected, or so poorly executed" as to amount to deliberate indifference).  Recognizing that, when a person is raped, "the effect of such abusive conduct on a victim does not necessarily end with a cessation of the abusive conduct," courts have found that "*the possibility* of further encounters between a rape victim and her attacker could create an environment sufficiently hostile" to be actionable under Title IX. *Kinsman v. Fla. State Univ. Bd. of Trs.*, No. 4:15cv235-MW/CAS, 2015 U.S. Dist. LEXIS 180599, at *11 (N.D. Fla. Aug. 12, 2015) (quoting *Kelly*, 2003 U.S. Dist. LEXIS 4543 at *4) (internal quotations omitted) (emphasis added).

### C.    Plaintiff's Complaint Sufficiently Pleads A Claim of Retaliation Under Title IX

A school that receives Federal financial assistance is liable to a plaintiff under Title IX for retaliation if (1) she engaged in protected activity, (2) the defendant knew of the protected activity, (3) the plaintiff suffered an adverse school-related action, and (4) there exists a causal connection between the protected activity and the adverse action.  *Gordon v. Traverse City Area Public Schools*, 686 Fed. Appx. 315, 320 (6th Cir. 2017).

Any conduct which opposes a practice that an individual has a good faith belief is unlawful under Title IX constitutes protected activity.  *Condiff v. Hart Cty. Sch. Dist.*, 770 F. Supp. 2d 876, 882 (W.D. Ky. 2011).  An individual who reports sexual harassment or assault is engaged in

11

activity protected under Title IX. *See Doe v. Univ. of Tenn.,* 186 F. Supp. 3d 788, 810 (M.D. Tenn. 2016). Filing a lawsuit opposing discrimination is also protected activity. *Fuhr v. Hazel Park Sch. Dist.,* 710 F.3d 668, 675 (6th Cir. 2013). It is undisputed that Doe's assertion of her Title IX rights through participation in the University's disciplinary process and filing a lawsuit constitutes protected activity of which the University was aware.

An action is adverse if it could have the effect of dissuading a reasonable person from opposing discrimination. *Gordon,* 686 Fed. Appx. at 320. The Supreme Court has not limited the actions and harms that may be considered retaliatory beyond requiring that they have the potential to dissuade a reasonable person from engaging in protected activity. *Burlington N. & Santa Fe Ry. v. White.* 548 U.S. 53, 57 (2006). The broad adverse action standard articulated in *Burlington N. & Santa Fe Ry. v. White* applies with equal force under Title IX. *Gordon,* 686 Fed. Appx. at 320. Doe has asserted that after she filed her lawsuit, the University's police department deliberately interfered with the disciplinary process to her detriment and the University permitted Doe to be questioned about her monetary interests in her lawsuit during the disciplinary hearing. Furthermore, the University found the Assailant not responsible for raping Doe at the only hearing which occurred after she filed her lawsuit, contrary to the three previous outcomes. A reasonable person would be dissuaded from filing a lawsuit to oppose discrimination if she knew the University would turn against her in the disciplinary process as a result.

Causal connection can be inferred where a plaintiff alleges a school sought to suppress evidence of harassment or made antagonistic comments regarding the plaintiff's protected activity. *See C.R. v. Novi Cmty. Sch. Dist.*, No. 14-14531, 2017 U.S. Dist. LEXIS 18394, at *28-29 (E.D. Mich. Feb. 9, 2017) (a school's attempt to suppress evidence related to a report of harassment is evidence of retaliation); *Dibbern v. Univ. of Mich.*, No. 12-15632, 2013 U.S. Dist. LEXIS 163538,

12

at *30-31 (E.D. Mich. Nov. 18, 2013) (causation can be inferred where professor who terminated plaintiff's research appointment made comments disparaging plaintiff's participation in a sexual assault crisis hotline and lamenting the possibility of having to report her complaint of harassment to the federal Office of Civil Rights).   The University's police department intentionally discouraged and prevented a supporting witness from testifying on Doe's behalf at the fourth administrative hearing and the University permitted Doe to be questioned about her lawsuit during the fourth administrative hearing.   Animosity toward Doe for filing a lawsuit can be inferred from this conduct and is sufficient to permit her claim of retaliation to proceed to discovery.

   **D.   Defendant's Misrepresentations of Law and Fact Do Not Undermine Plaintiff's Well-Pleaded Discrimination Claims**

   **i.   Plaintiff's Third Amended Complaint Supersedes All Prior Complaints and Corrects Any Previous Shortcomings in the Pleadings**

   Defendant is wrong on the law when it argues that the Third Amended Complaint "must be dismissed to the extent it re-alleges matters from the original Complaint on which the Court has already ruled."   The Court's reasoning in its order on the motion to dismiss the original complaint was necessarily limited to the facts put forth *in that complaint*, which is now moot. *See Gateway KGMP Dev., Inc. v. Tecumseh Prods. (In re Refrigerant Compressors Antitrust Litig.)*, 731 F.3d 586, 589 (6th Cir. 2013) ("An amended complaint supersedes an earlier complaint for all purposes."); *Ky. Press Ass'n v. State*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (an amended complaint renders moot a motion to dismiss an earlier complaint). "Plaintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 172 (3d Cir. 2013) (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1474).

This process would be meaningless if it was not possible for additional factual detail in an amended complaint to overcome a court's concerns about the sufficiency of an earlier complaint.

Moreover, there is no law of the case that binds this Court when assessing the legal sufficiency of the Third Amended Complaint because the new allegations in the Third Amended Complaint change the legal issue before the Court (from the sufficiency of the original complaint to the sufficiency of the amended complaint).  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1101 (10th Cir. 2017) (a previous determination about the sufficiency of an earlier complaint is not law of the case because "the issue before the district court . . . changed when the underlying complaint changed"); *Murr Plumbing v. Scherer Bros. Fin. Servs. Co.,* 48 F.3d 1066, 1070 n.7 (8th Cir. 1995) ("A decision that the original complaint was sufficient does not necessarily say anything about the sufficiency of the second amended complaint").[2]

Contrary to Defendant's assertions, the Third Amended Complaint does not merely "paraphrase and rehash" the allegations in the original complaint regarding the time period between October 2, 2014 and June 9, 2015.  Rather, the Third Amended Complaint adds factual details regarding the University's clearly unreasonable response to Doe's report of rape and the manner in which this affected her educational opportunities.  Compl. ¶¶ 19-20 (the University did not involve the Title IX Coordinator for over two years); ¶¶ 23-25 (no "Conduct Officer" performed any investigation); ¶¶ 29, 31-32 (The University did not address the rape's negative

---

[2] Even if the Court's order on the first motion to dismiss had any bearing on the Third Amended Complaint currently before the Court, law-of-the-case only binds a district court where the decision at issue was made by an appellate court. *Williams v. McLemore*, 247 F. App'x 1, 7 (6th Cir. 2007). A district court can always reconsider an issue it itself decided. *Id; see also Polec v. Nw. Airlines (In re Air Crash Disaster),* 86 F.3d 498, 518 (6th Cir. 1996) (a district court has the power to reconsider or modify its reasoning on an interlocutory order at any time prior to final judgment).

impact on Doe's education, despite being on notice in October 2014 of how the rape was affecting Doe); ¶ 47 (Doe wanted to return to the University's campus, but was prevented from doing so because there was no final resolution that assured the Assailant would not also return); ¶54 (the lack of a final resolution continued to impact Doe's ability to obtain an education). The University unreasonably disregarded its own Title IX policies and procedures, which protracted the process and profoundly affected Doe's ability to obtain her education on campus.

The basis of Doe's Title IX discrimination claim is the totality of the University's response to her report of rape. Doe's discrimination claim should not be parsed into each of the University's discrete acts or into separate temporal periods. The relevant inquiry is whether the University's response to Doe's report of rape, when viewed comprehensively, was clearly unreasonable. *See Takla v. Regents of the Univ. of Cal.,* No. 2:15-cv-04418-CAS (SHx), 2015 U.S. Dist. LEXIS 150587, *20-22 (Nov. 2, 2015) (the court should examine the defendant's total response rather than consider whether each of the plaintiff's allegations taken individually constitutes deliberate indifference); *see also Williams v. Port Huron Area Sch. Dist. Bd. of Educ.*, No. 06-14556, 2010 U.S. Dist. LEXIS 30472, at *29 (E.D. Mich. Mar. 30, 2010) (in the Title VI context, applying a totality of the circumstances approach to assessing deliberate indifference), *rev'd on other grounds by Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 613 (6th Cir. 2012) (reversing the district court on the question of §1983 qualified immunity); *Zeno v. Pine Plains Cent. Sch. Dist.*, 2009 U.S. Dist. LEXIS 42848, at *7 (S.D.N.Y. May 19, 2009) (in the Title VI context, noting the relevant question for purposes of deliberate indifference is the "reasonableness of [the school's] comprehensive response").

Construing the facts in the light most favorable to the Plaintiff and drawing all reasonable inferences, the additional factual details in the Third Amended Complaint overcome any

insufficiency in the earlier complaints and the Third Amended Complaint states a claim for deliberate indifference. *See* Section B, *supra*.

**ii.    Defendant is Liable for Denying Plaintiff the Benefits of a Federally-Funded Education Program or Activity**

Title IX prohibits sex discrimination in a "program or activity", 20 U.S.C. § 1681(a), which is defined as "*all* the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education," 20 U.S.C. §1687.  The focus, therefore, is on the nature of the defendant entity; "[t]he plaintiff's characteristics—for example whether she's a student, employee, or something else—may be relevant, but they aren't necessarily dispositive." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 556 (3d Cir. 2017) (finding a medical resident could pursue a Title IX claim against a teaching hospital affiliated with a university even though she was not working towards a degree at the hospital nor paying it tuition).  Other courts have also recognized that a plaintiff's student or non-student status is not dispositive of whether the plaintiff has a Title IX claim against an entity.  *See e.g., Armstrong v. James Madison Univ.,* No. 5:16-cv-00053, 2017 U.S. Dist. LEXIS 25014, at *18 n.14 (W.D. Va. Feb. 23, 2017) (Title IX protections may extend to an alumnus whose alumni membership to school's fitness center was revoked); *Kobrick v. Stevens*, No. 3:13-2865, 2014 U.S. Dist. LEXIS 137554, at *27 (M.D. Pa. Sep. 30, 2014) (allowing student plaintiff to proceed with a Title IX claim against harassing teacher's former employer, a school which she never attended).  The Sixth Circuit has emphasized that "Congress has made clear its intent to extend the scope of Title IX's equal opportunity obligations to the furthest reaches of an institution's programs" and that courts should not "defeat that purpose by recognizing artificial distinctions in the structure or operation of an institution."  *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994).

Doe lived in the University's housing pursuant to the agreements and affiliations between the University and BCTC.  The experience of living in the dorms was an opportunity and benefit related to her education that was provided by and controlled by the University.  The University's delay in resolving her report of rape prevented her from accessing that benefit without fear of her Assailant being permitted to return to the campus as a result of a successful appeal.  The deprivation of that benefit is actionable under Title IX. *See, e.g., Lopez v. Metro. Gov't,* 646 F. Supp. 2d 891, 897-98, 918 (M.D. Tenn. 2009) (where sexual assault occurred on the school bus operated by the public-school district, plaintiff could bring a Title IX claim against the district even though he attended a private school).  Furthermore, because BCTC's Lexington campus was embedded within the University's campus, the University's clearly unreasonable handling of her report of rape also prevented her from accessing the academic classes in which she was enrolled.[3]  The University's control over plaintiff's ability to access her education is relevant to its Title IX liability. *See, e.g., Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n,* No. 1:98-CV-479, 2000 U.S. Dist. LEXIS 675, at *17 (W.D. Mich. Jan. 21, 2000) ("any entity that exercises controlling authority over a federally funded program is subject to Title IX").

Contrary to Defendant's assertions, a BCTC-Lexington student is not like "any other student" seeking to transfer to the University. In addition to the interrelationship between the two

---

[3] The Court may take judicial notice of the geographic location of BCTC's Lexington campus, i.e. "Cooper Campus", and its relation to the University's campus. *See United States v. Cole*, No. 93-1344, 1994 U.S. App. LEXIS 3876, at *5 (6th Cir. Mar. 1, 1994)("geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial"); *see also Atkins v. Berghuis*, No. 2:09-CV-10711, 2010 U.S. Dist. LEXIS 59396, at *12 n.4 (E.D. Mich. May 21, 2010) (using a maps website to take judicial notice of a distance between two points); *United States v. Emmons*, No. 1:11-CR-81, 2011 U.S. Dist. LEXIS 160173, at *9 n.1 (S.D. Ohio Sep. 21, 2011) (same).

entities in terms of geography and housing, the University is required by statute to accept all courses completed through BCTC as credits towards a degree at the University.  Ky. Rev. Stat. § 164.2951.  Through its website, the University advertises a special relationship with BCTC that provides for "seamless transition," implying that, with respect to the goal of obtaining a bachelor's degree from the University, there is an educational benefit to attending BCTC rather than, for example, an out-of-state or private community college. Because the University was providing Doe with educational benefits and opportunities which were negatively impacted by its clearly unreasonable response to her report of rape, she has stated a Title IX claim against it.

### iii. Plaintiff Is Not Making A Claim Under the Department of Education's Office of Civil Rights Guidance; Her Claim is Brought Under the Title IX Statute

Defendant wastes pages of its brief opposing any assertion of a right of action for "non-compliance with the Department of Education's Office of Civil Rights ("OCR") guidance materials."  It is an argument that has absolutely nothing to do with the substance of Doe's complaint, which nowhere mentions or cites to any OCR guidance materials.  Doe is asserting claims for violation of the Title IX statute, under which she has sufficiently stated claims for discrimination and retaliation, as discussed in sections B and C, *supra*.

### iv. Active Litigation Does Not Excuse the University's Obligation to Pursue a Prompt and Final Resolution of Doe's Report of Rape

Defendant's use of its motion to dismiss to offer its one-sided explanations for the delay in conducting a fourth hearing is wholly inappropriate.  The purpose of a motion to dismiss is to dispute the sufficiency of a plaintiff's assertions, *which must be accepted as true*, in the complaint.  Defendant cannot one-sidedly introduce portions of its conversations with Doe's previous counsel in an attempt to persuade the Court regarding its version of the facts.  As

18

discussed in section A, *supra*, a decision under a summary judgment standard at this time would be premature, unfair, and inefficient.

Defendant also, in direct contradiction to its assertion that it wanted to hold a hearing but was thwarted by Doe's counsel, admits that it did not schedule a hearing because the filing of this and another Title IX lawsuit created "uncertainty about how the fourth hearing was to be conducted." Def.'s Mot. to Dismiss, DE 60, at 24. The University essentially grumbles that it was hamstrung from taking any action until it learned from Doe's briefing that Doe was not requesting the Court "intervene in the student disciplinary process." *Id.* at 25. Defendant's position is untenable; Defendant's contention that Doe's claim for injunctive relief prevented the fourth hearing takes victim blaming in a sexual assault case to a new level. There were several options available to Defendant in order to more promptly resolve the question of how the claim for injunctive relief affected its ability to conduct the fourth administrative hearing; using active litigation as an excuse for failing to meet its Title IX obligations supports rather than refutes that it acted in a clearly unreasonable manner.

## V.      CONCLUSION

The University's efforts to implement Title IX were slow, uncoordinated, ad hoc, and wholly inadequate to eliminate the hostile environment, or address the effects of rape in order to provide Plaintiff with continued equal access to educational opportunities. Defendant cannot escape liability by cloaking its ineffectiveness as a reasonable response through the trappings of a Title IX adjudication process that it failed to implement effectively. For the aforementioned reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.

Date: March 13, 2018                         Respectfully submitted,

                                             CORREIA & PUTH, PLLC

                                               _/s/  Linda M. Correia_____
                                             Linda M. Correia, *admitted pro hac vice*
                                             Roshni C. Shikari, *(pro hac application pending)*

                                             1775 K Street NW, Suite 600
                                             Washington, DC 20006
                                             (202) 602-6500
                                             lcorreia@correiaputh.com

                                             WAGNER LAW OFFICE, PLLC

                                             Wendi S. Wagner (KBA No. 85464)

                                             539 Market St., Ste. 400
                                             Louisville, KY 40202
                                             (502) 632-3705
                                             wendiswagner@gmail.com

                                             *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2018, I electronically filed the foregoing documents

through the CM/ECF system, which will send a notice of electronic filing to all participants.


/s/ *Linda M. Correia*
Counsel for Plaintiff