UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:15-296-JMH |
| ) | |
| v. ) | |
| ) | |
| UNIVERSITY OF KENTUCKY, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter comes before the Court on Defendant University of Kentucky's (the "University") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for alleged lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Plaintiff has responded in opposition and has also moved for discovery. For the reasons stated below, the Court **denies** the University's Motion to Dismiss (DE 102) and **grants** Plaintiff's Motion for Discovery (DE 107).

I.  **Background**

Plaintiff Jane Doe ("Doe") was enrolled in her first year at the Bluegrass Community and Technical College ("BCTC")[1] in the fall of 2014, when she alleged that she was sexually assaulted by a

---

[1] Previously known as the Lexington Community College, BCTC was an entity that was wholly owned, managed, and governed by the University. While Doe was not enrolled as a University student, Doe lived on campus in the University's residence hall. At this time, Doe had been enrolled in a dual academic program at BCTC, whose successful completion would permit a credit transfer to the University towards a bachelor's degree. (DE 57, ¶¶ 7-9).

University student. (DE 57, ¶ 7). Doe contends that she had previously been in a relationship with the perpetrator, until September 2014, when she terminated the relationship. (*Id.*, ¶ 11).

On October 2, 2014, Doe alleges that the physical assault occurred. During the encounter, her attacker

> forcibly removed [her] leggings, attempted to cover her mouth to prevent her from screaming, forced her to bend over her bed, and then forcibly penetrated his penis into her vagina. After the assault, the Assailant stated, "I'm done playing with you."

(*Id.*, ¶ 12). Doe immediately reported the rape to the University's police department, and from then on investigations ensued. (*Id.*, ¶¶ 16-19). Doe contends that shortly after she "became the target of harassment on campus and online in social media." (*Id.*, ¶ 21) On October 15, 2014, Doe withdrew from campus housing and dropped out of classes. (*Id.*, ¶ 33). The following year, she chose not to continue her education at BCTC, and instead enrolled in a dental assistant certification program at MedQuest College. (*Id.*, ¶ 62).

Over the course of two and a half years, the University conducted four disciplinary hearings. (*Id.*, ¶¶ 27, 41, 50, 70). Although Doe's alleged perpetrator was found responsible for the rape at the first three hearings (*see id.*, ¶¶ 30, 43, & 52) the University's appeal board (UAB) overturned the findings based on procedural deficiencies. (*Id.*, ¶¶ 39, 46, & 55). At the fourth hearing, however, the alleged perpetrator was found not responsible. (*Id.*, ¶ 78).

On October 1, 2015, Doe filed suit against the University alleging deliberate indifference to her alleged sexual assault violated Title IX. (DE 1, ¶¶ 41-47). Since 2015, however, Doe has amended her complaint on multiple occasions. (*See* DE 27, 42, and 57). In the latest amendment, filed on January 30, 2018, Doe added a Title IX claim of retaliation. (DE 57, ¶¶ 95-99). The University moved for dismissal arguing (among other things) that Doe lacked standing[2] to bring suit. (DE 60). Having attached several exhibits to the motion, the Court treated the motion as one for summary judgment and considered limited discovery relating to Doe's status as a non-University student. *Doe v. Univ. of Ky.*, 357 F. Supp. 3d 620, 623 (E.D. Ky. 2019).

On appeal, the Sixth Circuit reversed the Court's finding that Doe lacked standing to bring suit and remanded for further proceedings, consistent with deciding the merits of the deliberate indifference claim pursuant to recent case law. *Doe v. Univ. of Ky.*, 971 F.3d 553, 558-59 (6th Cir. 2020); *see Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613, 619-24 (6th Cir. 2019)(holding that Title IX deliberate-indifference claims require actual proof from the victim of further harassment). Shortly after the mandate was issued, however, the parties jointly

---

[2] The University raised this argument in the context of Doe's then-existing claim of deliberate indifference. (*See* DE 60 at 18-20).

moved to dismiss Doe's deliberate-indifference claim, leaving only the claim of retaliation. (DE 101).

On September 29, 2020, the University filed this motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). This matter is fully briefed. (DE 106; DE 108).

**II. Legal Standards**

The University brings this motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Assertions of sovereign immunity may be brought under this rule for lack of jurisdiction. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "[U]nlike subject-matter jurisdiction, 'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.' " *Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 963 (6th Cir. 2002)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, at the same time, Courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court may only consider the Complaint and any of its attachments, "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n* (528 F.3d 426, 430 (6th Cir. 2008). "[T]o consider matters beyond the complaint … would convert the motion [] into a motion for summary judgment." *Mediacom Southeast LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (citation omitted).

### III. Discussion
#### a. Sovereign Immunity

The University argues that sovereign immunity bars Doe from pursuing the retaliation claim. (DE 102 at 6). Doe argues that the Court previously considered the sovereign immunity defense, and rejected the argument in an earlier decision. (DE 106 at 5; *see*

*generally* DE 12: Memorandum Opinion and Order, Dated August 31, 2016).

Sovereign immunity is abrogated for Title IX claims against the university. *Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998). In *Franks*, the Sixth Circuit explicitly stated, "since Congress made its intention to abrogate the states' Title IX immunity unmistakably clear, and it had the authority to do so pursuant to Section 5 of the Fourteenth Amendment, we hold that Congress successfully abrogated the states' Eleventh Amendment immunity from Title IX lawsuits." *Id.*

Here, the University attacks the validity of *Franks*, by arguing that it does not control in the context of a retaliation setting (*see* DE 102 at 10). However, to the extent the University is arguing that the Court should ignore *Franks*, that assertion (without more) is insufficient. "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004). The Court is also not convinced that retaliation is a different subset of discrimination. Nor is the Court convinced that *Franks* is inapplicable in this Title IX context.

In any case, the Court need not decide the issue now. "The Sixth Circuit has not explicitly decided whether a

Page **6** of **11**

court *must* or *may* resolve a sovereign immunity defense before addressing the merits of a claim." *Wesley v. Campbell*, 2010 WL 3120204, at *4 (E.D. Ky. Aug. 5, 2010) (citing *Nair*, 443 F.3d at 477). "Despite the lack of precedent clearly deciding this issue, the trend favors granting federal courts discretion to first address immunity issues or address the merits." *Id*.

Here, in its discretion, the Court seeks to proceed with adjudication on the merits. There is evidence to suggest that the University has raised sovereign immunity as an alternative ground for rejecting Doe's retaliation claim; otherwise, it would not have pursued dismissal on additional 12(b)(6) grounds.

### b. Standing

The University briefly asserts that the Court should otherwise find that Doe lacks standing to assert her remaining claim. (DE 102 at 15-16). This argument[3] is premised on the fact that Doe's claim arises out of conduct that occurred long ago, when Doe was no longer in University housing. (*Id*.) The University adds that the claim arises out of the fourth disciplinary hearing, in 2017, when Doe was just a "witness" and no longer a student.

---

[3] The Court finds this argument curious. Ironically, the University faults Doe for the timeline of this claim, when the University, too, could have raised this standing argument in its previous motion to dismiss but did not. (*See generally* Sealed Motion to Dismiss Third Amended Complaint, filed February 20, 2018(DE 60 at 18-20, 27-28)).

However, the Court cannot reduce Doe's status as a mere a witness; Doe's status cannot merely be looked at in a vacuum. The Court must look to the progression of the case, including the four disciplinary hearings, and ultimately what lead to this claim. To foreclose Doe from arguing the merits of the retaliation claim would be unjust, as a causal connection to the University's conduct plainly exists.

### c. Retaliation

The parties, at the least, agree on litigating this matter under the same framework. (See DE 102 at 16, n.102; DE 106 at 15). In unpublished authority, the Sixth Circuit has determined that a Title IX plaintiff must make a prima facie showing "that (1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017). "Other sister circuits apply similar tests." *Bose v. Bea*, 947 F.3d 983, 988-89 (6th Cir. 2020), *cert. denied sub nom. Bose, Prianka v. Bea, Roberto, et al.*, No. 20-216, 2021 WL 78095 (2021).

In her response, Doe clarifies the bases for her claim of retaliation, arguing that the University retaliated against her when it:

> (1) delayed scheduling the fourth [disciplinary] hearing by more than fifteen months, (2) cancelled the fourth hearing on the morning it was to start, (3) failed to hold the required pre-hearing meeting, (4) failed to make a request to continue the hearing until Officer Sizemore could testify, (5) intentionally kept Officer Sizemore from testifying, (6) permitted the Assailant to use Doe's recorded statements contrary to its prior ruling prohibiting such use, (7) allowed the fourth hearing panel to question her about her federal lawsuit during the hearing, (8) found the Assailant not responsible after three previous findings in her favor, (9) denied her appeal, and (10) made her unable to re-enroll in school because of the significant distress caused by the three additional administrative hearings and lack of appropriate supports. D.E. 57 ¶¶ 67, 71, 73, 76-78, 80-82, 86.

(DE 106 at 18). In a separate filing, Doe then moves to clarify the University's motion to dismiss and for discovery. (DE 107).

Doe argues that, while the University's motion is styled as a motion to dismiss, it is actually another motion for summary judgment because it relies on matters that fall outside of the pleadings. (*Id.*; DE 106). The University does not deny this. (DE 102 at 5-6). Similar to before (*see* DE 65), Doe asks the Court to unequivocally construe the University's motion as one for summary judgment; provide Doe an opportunity to conduct discovery on this claim; provide her the opportunity to file a motion for summary judgment; and preclude the University from supplementing his motion for summary judgment. (DE 107).

Like the Court previously found (*see* DE 76), there is no denying that the University's motion goes beyond the limits of a

Page **9** of **11**

12(b)(6) motion. Doe states that discovery is "crucial" because it is the only way it would be able to properly oppose the University's motion for summary judgment, and allow her the opportunity to draft her own motion for summary judgment. (DE 107 at 3). Doe does not state how much time is required for this discovery.

Rule 56(d) gives litigants a chance to secure " 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Cline v. Dart Transit Co.*, 804 F. App'x 307, 312 (6th Cir. 2020) (quoting *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019) (citation omitted). Rule 56(d) provides the Court with a few options. "[T]he Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; *or* (3) issue any other appropriate order." FED. R. CIV. P. 56(d) (emphasis added).

The Court, in fairness to all of the parties, and to provide Doe the opportunity to be heard, will defer a ruling on the retaliation claim, allowing the parties the opportunity to mutually conduct discovery on this issue and file respective motions for summary judgment upon its conclusion.

## IV. Conclusion

Accordingly, for the reasons stated above,

IT IS hereby ORDERED as follows:

(1) Defendant's Motion to Dismiss (DE 102) is DENIED.

(2) Plaintiff's Motion for Discovery (DE 107) is GRANTED to the extent that she is permitted, along with the University to conduct limited discovery and to file her own motion for summary judgment for the Court's consideration.

(3) The parties SHALL have forty-five (45) days from the entry of this Order to conduct **limited discovery** on Doe's remaining claim of retaliation.

(4) Within sixty (60) days from the entry of this Order the parties SHALL **each** file respective motions for summary judgment. The parties are **cautioned** to tailor their arguments to addressing the merits of Doe's remaining claim. Response and reply deadlines will be governed by local rules.

This the 15th day of September, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge