```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| **JANE DOE,**            )<br>                          )<br>    **Plaintiff,**         )<br>                          )<br>  **v.**                   )<br>                          )<br>  **UNIVERSITY OF KENTUCKY,** )<br>                          )<br>    **Defendant.**         ) | Civil Case No.<br>5:15-cv-296-JMH<br><br>**MEMORANDUM OPINION**<br>**And ORDER** |

                           *** *** ***

Jane Doe ("Doe") filed this action against the University of Kentucky on October 1, 2015, alleging several claims; now, only one remains. Given the lengthy procedural history, the Court solely touches upon those facts most pertinent to the current action. The University has moved for Summary Judgment against Doe on the remaining issue: Title IX retaliation. (DE 129). Doe has voiced opposition to the motion and this matter has been fully briefed. For the reasons that follow, the University is granted summary judgment against Doe. This matter is **dismissed.**

                                  **I.**

In the fall of 2014 Doe was a first-year student, enrolled in a dual-enrollment program between the Bluegrass Community and Technical College ("BCTC") and the University of Kentucky ("the University"). (DE 57, ¶ 7). According to the Third Amended Complaint, the program provided students, like Doe, an opportunity

to take courses at BCTC, whose credits — if applicable — would be eligible for transfer to be applied towards a bachelor's degree at the University. Because of this dual-enrollment program, and with the goal of ensuring a "seamless transition," Doe was permitted to live on University campus and in a University dorm. (*Id.*, ¶¶ 7, 9).

On October 2, 2014, Doe alleges that a sexual assault occurred in her dorm room. (*Id.*, ¶¶ 10, 15). The alleged assailant was her ex-boyfriend, a member of the University football team. (*Id.*, ¶¶ 10-12). That same day, after the assailant had left her dorm room, Doe called 911 to report the rape to the University police department. (*Id.*, ¶ 17). Officer Laura Sizemore responded to the call and drove Doe and her roommate to the University's Albert B. Chandler Hospital. (*Id.*). Once there, a nurse examined Doe for sexual assault.

The University issued a no-contact order and suspended the assailant ("Student B") on October 3, 2014. (*Id.*, ¶ 26). Both Doe and Student B were notified that a student conduct ("disciplinary") hearing was scheduled for October 8, 2014; however, Student B could not attend, due to a conflict.[1] (*Id.*, ¶ 27). At this hearing, Doe

---

[1] Student B submitted a written statement noting his unavailability and requesting a continuance. (DE 57, ¶¶ 27, 39).

testified that she was feeling physically and mentally traumatized[2] following the assault. (*Id.*, ¶ 30). The hearing panel issued its decision by letter the next day, October 9, finding Student B responsible for sexual misconduct, with the disciplinary action resulting in permanent expulsion. Through an attorney, Student B appealed the decision to the University's Appeal Board ("UAB"). (*Id.*, ¶ 34).

On December 4, 2014, the UAB found that the hearing panel had committed a procedural error in conducting the hearing without Student B present. (*Id.*, ¶ 39). Therefore, a second hearing was scheduled for December 18, 2014. (*Id.*, ¶ 41). Doe submitted a statement that she would not be attending the hearing on account of the "distress caused by the appeal process," as well as the counsel she received from University employees. (*Id.*, ¶ 42). Doe was told that her recorded statement from the first hearing would be used, as well as the police report. (*Id.*).

The University panel issued its decision on December 22, 2014. The hearing panel found Student B responsible for the assault and ordered that he be permanently expelled from the University. (*Id.*, ¶ 43). Student B appealed this decision. (*Id.*, ¶ 44).

---

[2] Following the hearing, Doe withdrew from classes and university housing. (*Id.*, ¶ 33).

On February 9, 2015,[3] the UAB found that the second hearing panel's decision could not stand and must be reversed, again, on account of having committed procedural errors. The first error consisted of the panel's usage of Doe's recorded testimony from the first hearing. (*Id.*, ¶ 46). This is so, because the "prior UAB decision rendered the record from the first hearing 'essentially inadmissible in any later proceeding' against [Student B]." (*Id.*). Second, because Doe and her roommate were absent from the second hearing, the UAB found that Student B's right to confront his witnesses had been "improperly denied." (*Id.*).

The UAB contacted Doe to inquire about her availability and/or willingness to participate in a third hearing. (*Id.*, ¶ 49). Doe consulted with various University officials, and eventually agreed to participate via telephone from another location on University campus. (*Id.*, ¶¶ 48-50). The third hearing was scheduled for March 26, 2015, and the decision was rendered on April 2, 2015. (*Id.*, ¶¶ 50, 52). Student B was found responsible for the alleged misconduct and was ordered to be suspended for a period of five years, with a contingency of return only if the requisite counseling was received. (*Id.*, ¶ 52). Student B appealed this decision on April 13, 2015. (*Id.*, ¶ 53).

---

[3] At this time, Doe had re-enrolled in classes at the BCTC-Lawrenceburg campus. (*Id.*, ¶ 45).

On June 9, 2015, finding that the third hearing panel had committed a procedural error, the decision was reversed. (*Id.*, ¶ 55). The error pertained to the panel's decision to allow Officer Sizemore and Detective Brannock, who had interviewed Student B, to testify in each other's presence in violation of the Student Code of Conduct. (*Id.*).

On June 29, 2015, Dr. Denise Simpson, then-Director of the Office of Student Conduct, emailed Doe to inquire about her availability and interest in participating in the fourth hearing; she indicated that the "goal" would be to conduct the hearing sometime between July 20 and July 31, 2015. (DE 131-1 at 1). Dr. Simpson also stated that she was interested in hearing about any concerns she might have regarding the hearing. Doe responded, on July 6, noting that she would be out of town within that time period and asking whether the hearing could occur in August. (*Id.*, at 5). On July 15, Dr. Simpson responded to Doe, asking her to complete an online poll regarding her availably in August. (*Id.*, at 9). Dr. Simpson assured Doe that this poll would be unique to her participation only. (*Id.*). On July 30, Doe indicated that she had retained new counsel, and thus, would need to check with her counsel's availability before proceeding with scheduling. (*Id.* at 11).

In August 2015, Doe dropped out of the program at BCTC in Lawrenceburg. (DE 57, ¶ 62). Doe's newly-retained counsel, Elizabeth Howell, corresponded with the University during that period. (DE 131-1 at 13-14, 16-17). Howell indicated that she would make efforts to advise the university of Doe's decision regarding her participation at the hearing when such decision was made. (*Id.*).

Doe initiated the current action on October 1, 2015. (DE 57, ¶ 63). Injunctive relief requesting that the University comply with federal law under Title IX was included among the list of requested relief. (*See* DE 1 at 11).

On October 5, 2016, the University notified Doe and Student B that the fourth hearing would be set for October 19, 2016. (*Id.*, 66). However, on the morning of the 19th, the hearing was cancelled and rescheduled for the week of November 14, 2016; subsequently, the hearing was rescheduled once more. (*Id.*, ¶ 67). On December 19, 2016, the University notified the parties that the fourth disciplinary hearing would be set for January 10, 2017. This hearing took place as scheduled.

At the conclusion of the hearing, the panel issued its decision; Student B was found not responsible. (*Id.*, ¶ 78). Doe appealed; it was denied by the Appeals Board. (*Id.*, ¶ 86).

As of the date of filing, Doe's Third Amended Complaint consisted of Two Counts, discrimination (Count 1) and retaliation (Count 2), both in Violation of Title IX of the Education Amendments of 1972. (*Id.*, ¶¶ 95-99). Now, only one claim remains: retaliation. (DE 104). Defendant has moved for summary judgment. (DE 129). Doe vehemently opposes, arguing that the issues presented are plainly for a jury to decide. (DE 138). Because Doe's assertions are too speculative to survive the summary judgment standard, the Court finds that the University is entitled to judgment as a matter of law.

## II.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the nonmoving party must go beyond the pleadings and come

forward with specific facts demonstrating the existence of a genuine dispute for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

"A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the nonmoving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). The nonmovant "must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

However, the Court is under "no … duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

### III.

"Title IX provides that '[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.' " *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) (quoting 20 U.S.C. § 1681(a)). In *Davis*, the Supreme Court held that student-on-student sexual harassment can sustain a Title IX claim against the victim's school "[i]n certain limited circumstances." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

Doe argues that the University retaliated against her in violation of Title IX. She argues that "[t]he University delayed and manipulated the conduct of the fourth [administrative] hearing and abandoned its role under its own policy as prosecutor, failing to advance the "best case" against Doe's assailant." (DE 138 at

1). As outlined in Doe's Third Amended Complaint, filed on January 30, 2018, her claim is premised on the following:

> [] The University retaliated against Doe when the University's chief of police deliberately interfered with the disciplinary process to aid the Assailant and impede Doe.
>
> [] The University retaliated against Doe when it asked her about her federal lawsuit in the fourth administrative hearing and injected the hearing with suggestion that Doe's assertion of her rights was motivated by a desire for a monetary recovery.
>
> [] The University retaliated against Doe when against the weight of the evidence, it found the Assailant not responsible.

(DE 57 at 16). However, as detailed in Doe's Response to an earlier Motion to Dismiss (DE 106), she attempts to clarify that the University retaliated when it:

> (1) delayed scheduling the fourth hearing by more than fifteen months, (2) cancelled the fourth hearing on the morning it was to start, (3) failed to hold the required pre-hearing meeting, (4) failed to make a request to continue the hearing until Officer Sizemore could testify, (5) intentionally kept Officer Sizemore from testifying, (6) permitted the Assailant to use Doe's recorded statements contrary to its prior ruling prohibiting such use, (7) allowed the fourth hearing panel to question her about her federal lawsuit during the hearing, (8) found the Assailant not responsible after three previous findings in her favor, (9) denied her appeal, and (10) made her unable to re-enroll in school because of the significant distress caused by the three additional administrative hearings and lack of appropriate supports.

(*Id*. at 18). The University argues that "Doe cannot attempt to cure the inadequacies of her … Complaint by alleging additional retaliatory actions by the University in briefing." (DE 129 at 18). The Court agrees. Below, the Court focuses its attention to the facts most pertinent to the claims alleged in the complaint (DE 57 at 16).

To establish her claim of retaliation under Title IX, Doe must show "'that (1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action.' " *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020), *cert. denied sub nom. Bose, Prianka v. Bea, Roberto, et al.*, No. 20-216, 2021 WL 78095 (U.S. Jan. 11, 2021) (citing *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017)). "To qualify as 'adverse,' an educational action must be sufficiently severe to dissuade a 'reasonable person' from engaging in the protected activity." *Gordon*, 686 F. App'x at 320 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Examples of "sufficiently severe" adverse educational actions include suspension, in-class punishment, placement in a different class, and denying enrollment in a desired class. *Id*. at 320–21.

Since Doe has failed to produce direct evidence, her retaliation claim is evaluated using the *McDonnell Douglas* burden-shifting framework. In the absence of direct evidence, courts apply the *McDonnell Douglas* burden-shifting framework to discrimination claims. *Gordon,* 686 F. App'x at 319-20; *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 688, 674 (6th Cir. 2013) *abrogated on other grounds by Univ. of Texas Southwest Med. Ctr. v. Nassar*, 133 S. Ct. 217 (2013); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Under this framework, the burden is first placed on Doe to submit evidence from which a reasonable jury could conclude that she established a prima facie case of retaliation. *Id.* The burden shifts to the University to articulate a "legitimate, non-discriminatory reason" for any adverse action(s). Finally, the burden then shifts back to Doe to prove the University's reason is mere "pretext." She must do so by establishing that the University's reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012).

As explained above, to establish her claim of retaliation, Doe must show four elements. *Bose v. Bea*, 947 F.3d at 988. The University directs its arguments to the last two prongs: whether Doe can establish that she suffered an adverse school-related

action, and whether a causal connection exists between the protected activity and the adverse action. (DE 129 at 17-28). The University proffers that Doe cannot establish either.

As an initial matter, the Court finds that none of the retaliatory items cited in the Complaint (DE 57, ¶¶ 97-99), can be considered educational and/or school-related actions.

On June 9, 2015, the appeals board determined that procedural errors were committed as to the third hearing. (*Id.*, ¶ 55). By August 2015, Doe was no longer enrolled at the BCTC's Lawrenceburg campus; rather, she was enrolled at MedQuest College. (*Id.*, ¶ 62). While discussions related to the scheduling of the fourth hearing proceeded throughout the fall, a final hearing date was not established until December 9, 2016, with the hearing being scheduled for January 10, 2017. (*Id.*, ¶ 70). By January, it had been approximately 2 years and 3 months since Doe had resided in the University, and had participated in any school-related functions. (*See id.*, ¶¶ 33, 70). On this basis alone, Doe's claim fails.

Prior to the hearing, as expressed by her attorney in correspondence to then-Director of Student Conduct, Dr. Simpson, Doe was disinclined to participate at the fourth hearing. (DE 131-1 at 13-14). She stated that she would participate "if necessary to ensure [Student B] was responsible," but noted that the process

has been "extremely detrimental" to her "health and well-being." (*Id.*). The University's general counsel communicated to Doe's attorney that her participation could be critical, as it could "increase the chances of obtaining a finding of responsibility." (*Id.* at 32). He added that, "the University believes the chances of obtaining findings of responsibility are maximized" by having Doe testify in person. (*Id.*).

To accommodate Doe's mental health, her attorney anticipated that Doe might "waive" her right to attend, requesting that her prior testimony from the third hearing be used at the fourth hearing as direct examination. (*Id.* at 63). As such, Doe would only have to participate by answering cross-examination questions, which would occur through telephone from her attorney's office. (*Id.* at 64- 65). The hearing officer, Professor Robert Lawson granted Doe's request, finding that the request was well-founded and that such accommodations were reasonable in light of the underlying circumstances. (*Id.* at 68-69). Doe's counsel was advised of the pre-hearing process, which included Professor Lawson screening all questions, and being notified of the right to object at the hearing. (*Id.* at 71).

As requested and agreed upon by Doe, at the January 10, 2017 hearing, Doe's prior testimony from the third hearing was played to the panel. Doe was then asked questions after each

recording, which she answered live via videoconference. (*See generally* DE 131-22). The panel heard testimony from Student B, Doe, as well as Doe's roommate, Brittney Smith. (DE 131-1 at 154-55). The panel reviewed multiple exhibits, including 45 photographs and eight videos of footage from security cameras at Doe's dorm; this included the dormitory hall's front entrance and exit, the front desk, and the elevator. (*Id.* at 154). The panel further received a copy of the police report written by Officer Sizemore, which was read aloud by Professor Lawson. (*See id.* 215-221).

Ultimately, "based on the preponderance of evidence[,]" the hearing panel determined that Student B was not responsible. (*Id.*). The panel noted that the "documentary information and statements" made by Student B were "instrumental in the collective decision." (*Id.* at 155). And particularly, that the decision came down to "credibility and plausibility." (*Id.*).

> Neither party disputes the general sequence of events the day of October 2, 2014. However, the panel did notice a few discrepancies between [Student B] and [Doe's] memory of the sequence of events.

(*Id.*). On January 31, 2017, Doe's attorney appealed the hearing panel's decision. (*Id.* at 158-63). She asserted multiple grounds.

As a baseline, Doe argued that the hearing "was not conducted in accordance with the principles of due process" and

that new information was not presented at the hearing that could have altered the outcome of the hearing. (*Id.* at 158, 160, 162). As an initial matter, the appeals board found no error in Professor Lawson's evidentiary rulings at the hearing, as they were well-reasoned, "and the hearing was conducted fairly considering the charges and information presented." (*Id.*, at 127).

One of Doe's claims on appeal, and before the Court now, concerns Officer Sizemore's absence from the fourth hearing. Doe argues that Officer Sizemore should have been called as a witness, alleging that her testimony would have been critical and would have bolstered her credibility. (DE 138 at 24). However, Doe does not identify what additional testimony Officer Sizemore could have provided, nor how her perceived testimony would have affected or altered the outcome of the hearing.

The appeal's board provided a lengthy 23-page decision. The board noted that Doe failed to request a continuance or object to Officer Sizemore's absence at the hearing. (DE 131-1 at 137-38). It concluded that it would "not overturn the Panel's decision based upon her unsubstantiated report of corruption." (*Id.* at 138). Officer Sizemore, too, agreed that all of her factual knowledge about the allegations were included in the police report, which the appeals board, too, had in its

possession upon review. Officer Sizemore's absence simply did not alter the outcome of the hearing.[4] Doe and her attorney could have objected to Officer Sizemore's non-attendance or requested a continuance of the hearing, but no such action occurred on their part.

Doe also cannot establish that Professor Lawson's rulings constituted retaliation. As previously stated, Doe's counsel was aware of the pre-hearing process, and had sufficient notice of how the hearing would be conducted. (*Id*. at 68-69). Under then-University procedure, the parties were required to submit proposed questions in advance of the hearing to Professor Lawson. As Mr. Lawson had previously told counsel, he would receive the proposed questions beforehand, and at the hearing, counsel would have the right to object, whereupon he would make a ruling.

To the extent that Doe claims Police Chief Monroe caused Officer Sizemore's absence from the hearing, this claim fails for the same reasons. Doe's arguments indicate some motive stemmed on the part of Chief Monroe; however, any conduct from Chief Monroe is *not* the University's conduct.

As to Doe's allegation that she received an anonymous message that concerned Officer Sizemore's non-attendance,

---

[4] Officer Sizemore had previously testified in only *one* of Student B's prior hearings which resulted in the same outcome as two previous hearings where she did *not* testify.

counsel was requested to provide information so that the allegation could be fully investigated. (*Id*. at 260-61). She refused. (*Id*. at 259). When Officer Sizemore was asked about her non-attendance, she denied that anyone told her not to attend. Too, Officer Sizemore met with Chief Monroe about this matter; she drafted a memorandum that detailed her conversation with him and her involvement with Doe. (DE 131-34). Therein, Officer Sizemore confirms her conversation with the Chief, and affirms that she was asked if she had childcare issues that would make her unable to attend the fourth hearing.

University counsel also inquired with Chief Monroe about the allegation made by Doe that he had some interference, or level of involvement, with Officer Sizemore's attendance. Chief Monroe provided a timeline and supporting information concerning the events preceding the fourth hearing. (DE 131-36 at 3). Chief Monroe noted that Officer Sizemore was unable to attend the Fourth Hearing because the police department was notified of the hearing with less that twenty-four hours' notice and, due to the short notice, she was unable to obtain childcare (*see* DE 131-35).

The hearing panel's ruling concretely identified the bases for its decision. The ruling explained that the case failed on credibility, as Doe's testimony was contradicted in part by the

documentary evidence. The reasons proffered by the appeals board in affirming the panel's decision, too, are legitimate, non-discriminatory reasons. Doe can identify nothing in either of those rulings that would constitute pretexts.

Here, not only can Doe not cite to any adverse-related school actions, but Doe also cannot show a causal link to retaliation for her claims. In sum, Doe's claim simply fails because she has not submitted evidence from which a reasonable jury could conclude that she established a prima facie case of retaliation. *Gordon*, 686 F. App'x at 319-20.

### IV.

"A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). Here, the Court finds that no material facts are in dispute. At best, Doe's arguments are conjecture.

IT IS HEREIN ORDERED that the Defendant's motion for summary judgment (DE 129) is GRANTED. An appropriate judgment will be entered contemporaneously herewith.

Dated this 14th day of October, 2022.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge